UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MEMNUNE A.,[1]

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:21-cv-705
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Memnune A. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

I.      PROCEDURAL HISTORY

On April 17, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since February 25, 2015. R. 94, 95, 167–70. Plaintiff later amended her alleged disability onset date to February 21, 2018, *i.e.*, one day after the date of the denial of Plaintiff's earlier application for benefits. R. 38, 63–78. The application was denied initially and upon reconsideration. R. 108–12, 114–16. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 119–20. Administrative Law Judge David Suna ("ALJ") held a hearing on July 2, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30–59. In a decision dated August 14, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from "February 25, 2015," Plaintiff's original alleged disability onset date,[3] through the date of that decision. R. 16–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 12, 2020. R. 5–10. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 18, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[4] On the same day, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3]The ALJ's reference to the original alleged disability onset date instead of the amended alleged disability onset date appears to be in error.

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018). *See* Fed. R. Civ. P. 25(d).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

3

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old on her amended alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: psoriatic arthritis; fibromyalgia; ankylosing spondylitis; degenerative joint disease of the knees; degenerative arthritis in the left foot; and obesity. *Id*. The ALJ also found that Plaintiff's alleged hip pain was not a severe impairment. R. 19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–20.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 20–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a child-care attendant. R. 23–24.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a tanning salon attendant, an usher, and a mail clerk—existed in the national economy and could be performed by Plaintiff. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. R. 25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 24. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 21.

IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

    A.   Ashraf Raslan, M.D.

Ashraf Raslan, M.D., one of Plaintiff's treating rheumatologists, saw Plaintiff for a follow-up examination on September 19, 2019. R. 420–21. Plaintiff reported muscle aches, arthralgias/joint pain, low back pain, and hand pain as well as morning stiffness for a few hours, but she reported no muscle weakness. R. 420. On physical examination, Dr. Raslan noted that Plaintiff was healthy-appearing, well-developed, obese, in no apparent distress, and with normal mood and affect, and that she ambulated normally. *Id*. He noted no contractures or synovitis in Plaintiff's joints, bones, and muscles ("No joint swelling or warmth appreciated") and no edema in her extremities. *Id*. However, there was generalized severe soft tissue and joint tenderness. *Id*. Dr. Raslan wrote: "Although Memnune has *findings suggestive of PsA/AS [psoriatic arthritis*

*and ankylosing spondylitis], her pain and generalized tenderness on exam is out of proportion to what's expected with her disease. Her complete lack of response to previous treatments makes me doubt this diagnosis at this point. Her pain appears to be more consistent with chronic pain syndrome and fibromyalgia.*" R. 420–21 (emphasis added). The doctor suggested that Plaintiff confer with a pain management specialist for evaluation and management of her chronic pain complaints. R. 421. Dr. Raslan diagnosed chronic pain syndrome; psoriatic arthritis; fibromyalgia; pain in the left foot and left knee; positive anti-nuclear factor; fatigue; and normal osteoporosis screen. *Id*.

      **B.**      **Robert Lahita, M.D.**

On April 24, 2020, Plaintiff presented to another treating rheumatologist, Robert Lahita, M.D., complaining of pain all over. R. 702–03. Dr. Lahita noted that Plaintiff "comes in with multiple diagnoses among them ankylosing spondylitis, psoriatic arthritis, systemic lupus, fibromyalgia, and osteoarthritis." R. 702. "It is unclear whether she really has any of these diseases. What is clear is that she has chronic pain syndrome for which she takes" medication. *Id*. Plaintiff's review of systems was "significant for morning stiffness of 1 to 2 hours and extreme pain most of the day. . . . As far as joint pains go[,] she says every joint [in] her body hurts, and every muscle in her body hurts." *Id*. On physical examination, Dr. Lahita reported, *inter alia*, that Plaintiff's distal pulses were normal and he found no musculoskeletal injury or deformity. R. 703. However, he noted "4+ tender p[]oints and exquisite back pains. Cannot do FABER test or abduct either leg." *Id*. Dr. Lahita's examination revealed non-tender jaw, shoulders, and elbows, but tender wrists, fingers, distal interphalangeal ("DIP") joints, proximal interphalangeal ("PIP") joints, metacarpophalangeal ("MCP") joints, thumb carpometacarpal ("CMC") joints, hips, knees, ankles, and toes. *Id*. Dr. Lahita assessed the following:

9

> 1. *Osteoarthritis*
> Really relegated to her left knee. *I doubt that her OA is inflammatory, but her pain is out of proportion to her complaints.*
> 2. *Fibromyalgia muscle pain*
> *Very exaggerated and really constitutes the basis for her condition.* Recent blood work indicates that she does not have SLE, PsA and RA. The pain could be from fibromyalgia.
> 3. *Polyarthralgia*
> Again Fibromyalgia is likely the principle cause of her problems. She is seeing a pain manager.

*Id*. (emphasis added).

## V.  DISCUSSION

Plaintiff argues that the ALJ failed to properly consider her subjective statements regarding fibromyalgia and mischaracterized the findings and opinions of Drs. Raslan and Lahita, resulting in a flawed RFC. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15–24; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1–3. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In the case presently before the Court, the ALJ followed this two-step evaluation process. In crafting the RFC,[5] the ALJ specifically considered Plaintiff's subjective complaints in

---

[5] The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she is limited to no more than frequent handling and

connection with fibromyalgia.⁶ R. 20–24. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements

---

    fingering; no more than occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; no more than frequent balancing; no more than occasional stooping, kneeling, crouching, and crawling; no exposure to hazards, such as unprotected heights and dangerous machinery; no more than occasional operation of a motor vehicle; and she must avoid concentrated exposure to extreme cold and extreme heat.

R. 20.

⁶ Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. A claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"), or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria"). *Id.*; *see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted).

  Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." SSR 12-2p.

  Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded[.]" *Id.* Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic

12

"concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ went on to consider the medical evidence, noting, *inter alia*, that a June 2019 review of systems was positive for muscle aches, arthralgias/joint pain, low back pain, and hand pain, but negative for muscle weakness; Plaintiff ambulated normally; her medications included ibuprofen, which provided some relief, Cymbalta, Otezla, ointments, and Tramadol; Plaintiff had rejected injectable or infusion drugs; June 2019 x-rays revealed early mild degenerative arthritis of the left foot and degenerative joint disease of the knees; Plaintiff neither used nor needed an assistive device during an August 2019 consultative examination; Plaintiff complained of pain with "the least amount of movement or palpation," but she appeared to have good range of motion; straight leg raising was uncomfortable and flexion was reduced in both knees, although there was no major swelling or fluid accumulation; Plaintiff complained of pain in both hands, but there was no interphalangeal or metacarpophalangeal swelling; she could make a fist with her right hand; "[w]hen asked whether she could grab a steering wheel, she said she holds it mostly with the left hand"; there was no evidence of swelling or crepitus in the left hand; she had difficulty approximating the thumb to the other digits; Plaintiff had full range of motion at the elbow, and with the examiner's help she could elevate the arms, but she complained of pain with movement and tenderness with palpation; she was able to put weight on one leg at a time if she held onto a table; she said that she was limited in her ability bend at the knee: "When questioned how she could drive and sit in a car, she said she manages to do that[.]" R. 21–22.

---

fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.*

The ALJ also considered opinion evidence, finding "not persuasive" the opinions of a physician, otherwise unidentified, at First Managed Care Option and of Plaintiff's treating physician, Jeffrey Lakin, M.D.,[7] explaining as follows:

> An unnamed physician at First Managed Care Option completed a number of physical capacities forms, where they opined that the claimant could sit 13 hours a day, and stand and/or walk 1 hour a day. She can lift and/or carry 10 pounds. In addition, they indicated that the claimant had never to occasional posturals (B11F, B13F/46, 53, 63, 73, 94). Similarly, Dr. J. Lakin completed a physical capacities form regarding the claimant in May 5, 2015 and opined that the claimant could sit 13 hours in a day, and stand and/or walk 2 hours in a day. She can occasionally lift and/or carry 10 pounds. She has no manipulative limitations. She can never balance, occasionally bend, never climb, and occasionally crawl, crouch, kneel reach, and twist (B9F). The undersigned finds these opinions not persuasive, as they are inconsistent with and not supported by the record as a whole, which reflects that the claimant ambulates normally (B1F, B2F, B3F).
>
> In addition, she uses no assistive device and is able to drive (B4F). Further, while the claimant appears to have some tenderness of the left ankle, there is no evidence of swelling or discoloration, and she appears to have good range of motion (B4F).

R. 23. In addition, the ALJ found "generally persuasive" the opinions of the reviewing state agency consultants who opined, *inter alia*, that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance and crouch; and occasionally stoop, kneel, and crawl. R. 23.

The ALJ evaluated Dr. Raslan's 2019 examination of Plaintiff, as follows:

> On September 19, 2019, the claimant appeared before Dr. Ashraf Raslan. Physical examination revealed that the claimant ambulated normally (B7F/2). There were no contractures or synovitis of the joints, bones, and muscles. While there was generalized severe soft tissue and joint tenderness, there was no joint swelling or warmth appreciated (B7F/2). *Dr. Raslan noted that the claimant's pain and generalized tenderness on exam is out of proportion to what is expected with her disease.* He noted that her complete lack of response to previous treatments made

---

[7] Plaintiff does not challenge the ALJ's evaluation of these opinions.

14

> him doubt her diagnosis at this point (B7F/2). *He indicated that her pain appeared to be more consistent with chronic pain syndrome and fibromyalgia* (B7F/3).

R. 22 (emphasis added). In addition, the ALJ considered Dr. Lahita's 2020 examination of Plaintiff, as follows:

> In April 22, 2020, the claimant appeared before Dr. Robert G. Lahita. Review of systems was significant for morning stiffness of 1 to 2 hours and extreme pain most of the day (B15F/1). *Dr. Lahita noted that the claimant's pain was out of proportion to her complaints. He noted that the claimant's fibromyalgia muscle pain was much exaggerated and really constituted the basis for her condition* (B15F/2).

*Id*. (emphasis added). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms as not entirely consistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *Benoit v. Saul*, No. 1:18-CV-02224, 2019 WL 8301636, at *6 (M.D. Pa. Dec. 6, 2019), *report and recommendation adopted*, No. 1:18-CV-2224, 2020 WL 1445857 (M.D. Pa. Mar. 25, 2020) (finding that substantial evidence supported the ALJ's decision that the claimant, who suffered from, *inter alia*, fibromyalgia, was not disabled where, among other things, her "allegations of pain []were out of proportion to fibromyalgia according to Benoit's rheumatologist"); *Decker v. Colvin*, No. 1:14-CV-01081, 2015 WL 3838234, at *11–13 (M.D. Pa. June 22, 2015) (finding, where the claimant had, *inter alia*, fibromyalgia that "the ALJ sufficiently explained her reasons for finding Decker's subjective complaints overstated" and that they "were not fully consistent longitudinally, particularly with respect to her abilities and activities of daily living and the objective medical evidence which showed that her symptoms improved with medication; her pain symptoms were not consistently reported as debilitating; and she had a normal gait and her extremities were within normal limits"); *cf. Orbin v. Barnhart*, 38 F. App'x 822, 822–23 (3d Cir. 2002) ("[T]he relevant consideration is not the fact that Orbin has been diagnosed, but rather to

what extent her illness causes functional limitations. . . . . Orbin relies on the diagnosis of fibromyalgia to assert that she is totally incapacitated, but doctors have found absolutely no medical evidence to support this assertion.").

Plaintiff contends that the ALJ improperly emphasized findings on "physical examination [that] did not reveal explicit or overt evidence of Plaintiff's severe impairments[,]" which suggests that the ALJ "does not consider the nature of fibromyalgia as a disease." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 17. Plaintiff further argues that the ALJ mischaracterized the examination findings of Dr. Raslan and Dr. Lahita:

> The ALJ stated "Dr. Raslan noted that the claimant's pain and generalized tenderness on exam is out of proportion to what is expected with her disease." T 22. However, Dr. Raslan's findings were in regards to Plaintiff's arthritis complaints, not fibromyalgia. T 420. Dr. Raslan even suggests Plaintiff's symptoms appeared more consistent with fibromyalgia. T 421. The ALJ also reiterates, "Dr. Lahita noted that [Plaintiff's] pain was out of proportion to her complaints." T 22. However, the "out of proportion finding" was in fact made in reference to Plaintiff's osteoarthritis, not fibromyalgia. T 703.

*Id*. at 18–19.

Plaintiff's arguments are not well taken. After noting Dr. Raslan's statement that Plaintiff's pain and generalized tenderness were "out of proportion to what is expected with her disease[,]"the ALJ went on to expressly acknowledge Dr. Raslan's opinion that "her pain appeared to be *more consistent with chronic pain syndrome and fibromyalgia*[.]" R. 22 (emphasis added). The ALJ did not mischaracterize Dr. Raslan's findings and opinion. *Compare* R. 22 *with* R. 420–21. In any event, this was but one piece of evidence that the ALJ considered when evaluating Plaintiff's subjective complaints and crafting the RFC determination. R. 20–23.

Similarly, Plaintiff has not persuaded this Court that the ALJ's reading of Dr. Lahita's findings and opinions warrants remand in this case. In both the medical record and in the ALJ's recitation, Dr. Lahita noted that Plaintiff's "pain is [was] out of proportion to her complaints."

*Compare* R. 22 with R. 702. Plaintiff suggests that the ALJ mischaracterized this evidence by failing to point out that this statement came under the heading of "Osteoarthritis[,]" which was "[r]eally relegated to her left knee." R. 703. However, the ALJ went on to expressly note that Dr. Lahita also characterized Plaintiff's "[f]ibromyalgia muscle pain" as "[v]ery exaggerated ." R. 22. *See* R. 703.  Plaintiff has not persuaded the Court that the ALJ's interpretation of this evidence constitutes reversible error or otherwise fatally undermines his consideration of Plaintiff's subjective complaints. *See Benoit*, 2019 WL 8301636, at *6.

In challenging the ALJ's consideration of her subjective complaints regarding fibromyalgia, Plaintiff refers to other evidence that she believes supports her subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 19 – 21; *Plaintiff's Reply Brief*, ECF No. 24, p. 2. However, the Court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints regarding fibromyalgia as well as his consideration of the findings and opinions of Dr. Raslan and Dr. Lahita. The Court also concludes that the ALJ's findings in this regard are supported by substantial evidence in the

record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## VI. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: May 9, 2023                                      *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE